**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RAMON SOTO, individually and on behalf of all others similarly situated, | ) ) | Case No: |
| | ) | |
| Plaintiff, | ) | **CLASS ACTION COMPLAINT** |
| | ) | |
| vs. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| HBL BEAUTY & CO LLC d/b/a PurelyWhite Deluxe, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff Ramon Soto ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant HBL Beauty & Co LLC d/b/a PurelyWhite Deluxe ("Defendant") and alleges, based upon personal knowledge as to Plaintiff and Plaintiff's acts, and on information and belief as to all other matters based upon, *inter alia*, the investigation of counsel, as follows:

## NATURE OF THE ACTION

1.      This is a civil class action brought individually by Plaintiff on behalf of consumers who purchased Defendant's PurelyWhite Deluxe Tooth Whitening Kit products that are marketed, sold, and distributed by Defendant ("Products").

2.      Defendant's Products are sold on its website, purelywhitedeluxe.com, as well as third-party retailer websites, like amazon.com, and brick-and-mortar stores, like Target, Walmart, Walgreens, and Macy's.

3.      As described more thoroughly below, the Products are mislabeled and misrepresented to Plaintiff and the proposed Class.

- 1 -

4.     Specifically, Defendant deceives consumers into believing that the Products are favored, endorsed, or approved by the United States Food & Drug Administration ("FDA") by placing the FDA name and logo on the Products' packaging.

5.     Also, Defendant currently represents that the Products regularly cost $120.00.[1] However, the Product is consistently sold at the "discounted" price of $49.99.[2]

6.     These representations are false, misleading, and reasonably likely to deceive the public.

7.     Defendant's prominent and systematic mislabeling of the Products and its false and deceptive advertising form a pattern of unlawful and unfair business practices that harm the public and, if unstopped, could lead to substantial societal harm.

8.     Plaintiff brings this suit to halt Defendant's unlawful sales and marketing of its Products and for damages he sustained as a result of Defendant's false and misleading marketing. Declaratory and injunctive relief is of particular importance given the likely consequences of Defendant's actions.

**PARTIES**

9.     Plaintiff is a resident and citizen of the state of Illinois who resides in Chicago, Illinois.

10.     Defendant is a New York limited liability corporation with its principal place of business at 149 Barton Lane, Bayport, NY 11707. Defendant manufactures, markets, and sells the

---

[1] *See, e.g.*, https://purelywhitedeluxe.com/products/teeth-whitening-kit (last visited Feb. 19, 2024); https://www.target.com/p/purelywhite-deluxe-teeth-whitening-kit/-/A-86968185#lnk=sametab (last visited Feb. 19, 2024); https://www.walmart.com/ip/PurelyWHITE-DELUXE-Teeth-Whitening-Kit-Complete-LED-Teeth-Whitening-15-Treatments-Whiter-Smile-In-7-Minutes/2145378413?athbdg=L1600&from=/search (last visited Feb. 19, 2024).
[2] *See id.*

Products throughout Illinois and the United States. Upon information and belief, Defendant's members are not citizens of the state of Illinois.

## JURISDICTION AND VENUE

11.    This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d). The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, there are thousands of Class members, and there are numerous Class members who are citizens of states other than Defendant's states of citizenship.

12.    This Court has personal jurisdiction over Defendant in this matter because Defendant transacts business and/or has agents within this District and has intentionally availed itself of the laws and markets within this District.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and because Defendant transacts business and/or has agents within this District and has intentionally availed itself of the laws and markets within this district.

## FACTUAL ALLEGATIONS

### The Products

14.    The Products are teeth whitening kits that purportedly use "dental grade whitening" that can "remove[] up to 12 years of stains," and are "designed for sensitive teeth." Defendant advertises that the Products come with 15+ treatments. On its website, Defendant states:

> Our Teeth Whitening Kit will visibly increase the whiteness of your teeth within 7 minutes. Our Kit features an effective formula created by dentists to promote the absolute highest level of at-home whitening. Loved by millions of customers, our products have become the gold standard of oral care.[3]

---

[3] https://purelywhitedeluxe.com/products/teeth-whitening-kit.

15.     The Products utilizes whitening gel[4] and an LED light that is supposed to accelerate the teeth whitening process:



[5]

16.     At all relevant times, Defendant has marketed its Products in a consistent and uniform manner. Defendant sells the Products in all 50 states through various distributors and retailers across the United States. According to Defendant, a Product is sold every 9 seconds.[6]

**The Federal Food, Drug and Cosmetic Act**

17.     The Medical Device Amendments of 1976 to the Federal Food, Drug and Cosmetic Act established three regulatory classes for medical devices. The three classes are based on the degree of control necessary to assure the various types of devices are safe and effective: Class I, Class II, and Class III.[7]

---

[4] The whitening gel component of the Products is made with carbamide peroxide, glycerol, deionized water, sodium bicarbonate, carbomer, and potassium nitrate. *See* https://purelywhitedeluxe.com/pages/faq-product-1.
[5] https://purelywhitedeluxe.com/products/teeth-whitening-kit.
[6] *Id.*
[7] https://www.fda.gov/medical-devices/consumers-medical-devices/learn-if-medical-device-has-been-cleared-fda-marketing#:~:text=Class%20I%20E2%80%93%20These%20devices%20present,enema%20kits%20and%20elastic%20bandages.

18.     47% of medical devices fall into the Class I category, and 95% of Class I medical devices are exempt from the regulatory process.[8]

19.     If a device falls into a generic category of exempted Class I devices, a premarket notification application and FDA clearance is not required before marketing the device in the U.S. However, the manufacturer is required to register their establishment and list their generic product with FDA.[9]

20.     The FDA does not "certify" devices. The FDA does not issue registration certificates to medical device facilities nor does the FDA certify information for facilities that have registered their establishments and listed their medical devices. When a facility registers and lists its devices, the resulting entry in FDA's registration and listing database does not denote approval, clearance or authorization of that facility or its medical devices.[10]

21.     Tooth whitening kits like the Products are exempt Class I medical devices that receive no FDA clearance or approval.

22.     Further, over-the-counter teeth whitening products like the Products are considered cosmetics,[11]  which are regulated by the United States Food & Drug Administration ("FDA") pursuant to the federal Food, Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 301 et seq., as well as analogous state statutes and regulations.

---

[8] *Id.*

[9] *Id.; see also* https://gloscience.com/blogs/blog/does-the-fda-approve-teeth-whitening-products.
[10] https://www.fda.gov/medical-devices/device-registration-and-listing/important-reminders-about-registration-and-listing.
[11] *See* https://www.cadentalgroup.com/what-you-need-to-know-about-teeth-whitening-and-the-fda/#:~:text=If%20You%20Want%20Safe%20Teeth,are%20subject%20to%20FDA%20approval.

23.     The FDCA prohibits the distribution of cosmetics that are misbranded. A cosmetic is considered misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. §§ 362(a).

24.     Any cosmetic product that is misbranded is illegal to sell. 21 U.S.C. § 331(a). Misbranded products thus have no economic value and are legally worthless.

25.     Also, the FDA specifically prohibits private sector companies, like Defendant, from using the FDA's name and logo on their materials, as such use would mislead consumers into believing the FDA endorses certain products.[12]

26.     The FDA's Name and Logo Policy states:

The "FDA" name, an initialism for the U.S. Food and Drug Administration, and corresponding logos are trademarks and service marks (hereinafter, "FDA Marks") specifically for the official use of the U.S. Food and Drug Administration and not for use by the private sector or on private sector materials, unless specifically authorized, in writing, by the FDA. Unauthorized use of FDA Marks on private sector materials could send a message to the public that the FDA favors or endorses a private sector organization or the organization's activities, products, services, and/or personnel (either overtly or tacitly), which the FDA does not and cannot do. Unauthorized use of the FDA Marks may violate federal law and subject those responsible to civil and/or criminal liability.[13]

27.     The Illinois Food, Drug and Cosmetic Act has expressly adopted the federal labeling requirements as its own. The definition of "misbranded" as defined by 410 ILCS 620/19 is exactly the same as the FDCA.

**Defendant is Using the FDA Logo to Mislead Consumers into Believing the Products are favored, endorsed, or approved by the FDA.**

28.     Defendant falsely represents to consumers, including Plaintiff, that the Products are favored, endorsed, or approved by the FDA.

---

[12] *See* https://www.fda.gov/about-fda/website-policies/fda-name-and-logo-policy.
[13] *Id.*

29. Defendant prominently displays the FDA's logo on the back of the Products' boxes:



---

[14] *See* https://truthinadvertising.org/articles/purelywhite-deluxe-teeth-whitening-kit/.

30.     On at least one of its online retail advertisements, Defendant also represents that it "use[s] the highest concentration of active whitening ingredients allowed by the FDA, so you can trust that you're getting a product that delivers real results."[15]

31.     Defendant's use of the FDA logo on the Products' labeling is false and misleading because the Products, which have both cosmetic and Class I medical device components, received no FDA clearance or approval.[16]

32.      Despite its knowledge that the Products were not favored, endorsed, or approved by the FDA, Defendant introduced misbranded Products into the U.S. market. The Products are thus "misbranded" under the FDCA.

**Defendant's Fake Sales and Discounts**

33.     Defendant's website and other retail websites create an illusion that at any given time, consumers are receiving a limited-time discount. Defendant does this by advertising fake limited-time sales, fake regular prices, and fake discounts based on the fake regular prices. For example, on its website, Defendant advertises a purported limited-time "Afterpay Day Flash Sale":

---

[15] https://www.walmart.com/ip/PurelyWHITE-DELUXE-Teeth-Whitening-Kit-Complete-LED-Teeth-Whitening-15-Treatments-Whiter-Smile-In-7-Minutes/2145378413?athbdg=L1600&from=/search (last visited Feb. 19, 2024).
[16] https://truthinadvertising.org/articles/purelywhite-deluxe-teeth-whitening-kit; *see also* https://gloscience.com/blogs/blog/does-the-fda-approve-teeth-whitening-products.



(Captured on February 23, 2024).[17]

34.     But Defendant's Product are always on sale, and these sales persist. For example, Defendant has prominently displayed, since at least August 2020, the Products on sale for $49.99 on its website. This sale is designed to induce consumers to purchase its Products under the mistaken belief that they are getting a significant bargain because they are buying while the sale is going on. Example screen captures showing sitewide sales at various points from 2020 through 2023 are shown below:



---

[17] https://purelywhitedeluxe.com/products/teeth-whitening-kit

(Captured on August 14, 2020).[18]



(Captured on November 29, 2020).[19]

# Teeth Whitening Kit

★★★★★ 1140 reviews
Regular price $70.00 Sale price $49.99

or 4 interest-free installments of **$12.50** by  afterpay⬀  ⓘ

Default Title - $49.99 USD ▾
Quantity
626 in stock
Add to cart

(Captured on May 6, 2021).[20]

---

[18] https://web.archive.org/web/20200814135013/https://purelywhitedeluxe.com/products/teeth-whitening-kit

[19] https://web.archive.org/web/20201129042205/https://purelywhitedeluxe.com/products/teeth-whitening-kit.

[20] https://web.archive.org/web/20210506155001/https://purelywhitedeluxe.com/products/teeth-whitening-kit#MainContent.



(Captured on July 28, 2021).[21]

**Teeth Whitening Kit**

★ ★ ★ ★ ★ 2039 reviews

**90.00  49.99**

or 4 interest-free payments of **$12.50** with afterpay⬦ ⓘ

ADD TO CART

(Captured on May 16, 2022).[22]

**Teeth Whitening Kit**

**90.00  49.99**

or 4 interest-free payments of **$12.50** with afterpay⬦ ⓘ

ADD TO CART

(Captured on September 30, 2022).[23]

---

[21] https://web.archive.org/web/20210728102115/https://purelywhitedeluxe.com/products/teeth-whitening-kit.

[22] https://web.archive.org/web/20220516082826/https://purelywhitedeluxe.com/products/teeth-whitening-kit.

[23] https://web.archive.org/web/20220930155456/https://purelywhitedeluxe.com/products/teeth-whitening-kit.

(Captured on February 16, 2023).[24]



(Captured on September 21, 2023).[25]

35.     As show above, Defendant's website shows that Defendant has listed various fake regular prices (i.e., the price reflecting the list price or value of an item), ranging from $69.99 to $120.00, and fake discounts.

36.     The Products' listed regular price is not their prevailing price. Instead, they are always available at a discount from the purported regular price, and the consumer is not receiving the advertised discount by buying during the purported sale.

---

[24] https://web.archive.org/web/20230127110339/https://purelywhitedeluxe.com/products/teeth-whitening-kit.
[25] https://web.archive.org/web/20230921184411/https://purelywhitedeluxe.com/products/teeth-whitening-kit.

37.     By listing fake regular prices and fake discounts, Defendant misleads consumers into believing they are getting a good deal.

**Defendant's Representations are False and Misleading to a Reasonable Consumer**

38.     Defendant's representations are false and misleading to a reasonable consumer.

39.     Reasonable consumers would expect that the Products are FDA-favored, endorsed, or approved based on Defendants' packaging and advertisements, which prominently display the FDA logo.[26]

40.     Also, based on Defendants' advertisements, reasonable consumers would expect that the Products were on sale, the sale was limited in time, the Products had a specific regular price, and the consumers were receiving discounts. Consumers are more likely to buy a product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount. Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[27] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[28] Similarly, when consumers believe that an offer is

---

[26] *See* https://www.fda.gov/about-fda/website-policies/fda-name-and-logo-policy.

[27] https://www.invespcro.com/blog/how-discounts-affect-online-consumerbuying-behavior/.

[28] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

expiring soon, the sense of urgency makes them more likely to buy a product.[29] Thus, Defendants'
advertisements harm consumers by inducing them to make purchases based on false information.

41.     Plaintiff and Class members relied on Defendant's misrepresentations and
misstatements regarding the Products. When Plaintiff and Class members purchased Defendant's
Products, they did not know, and had no reason to know, that Defendant's Products were not
favored, endorsed, or approved by the FDA, or that the Products are always on "sale" for $49.99
and never sold at the purported "regular" price.

42.     Plaintiff and Class members would not have purchased the Products had they
known Defendant's Products were not favored, endorsed, or approved by the FDA, or that the
Products were not discounted as advertised and that they were not receiving the advertised
discounts.

43.     As a result of Defendant's deceptive marketing, Plaintiff and other consumers
suffered injury in fact and lost money or property.

44.     Plaintiff and other consumers will continue to suffer injury as a result of
Defendant's ongoing misrepresentations.

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF**

45.     Plaintiff purchased the Products various times for his personal use at Target and
Walmart stores in Chicago, Illinois. His most recent purchase was in December, 2023, when he
purchased the Product for $49.99.

---

[29] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion
rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black
Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with
countdown timer).

46.     When purchasing the Products, Plaintiff reviewed the accompanying packaging and understood the FDA logo placed by Defendant on the packaging to mean the Products were FDA-favored, endorsed, or approved; not misbranded; and legal to sell. Plaintiff relied on these materially misleading representations in deciding to purchase the Products manufactured and sold by Defendant, and these representations were part of the basis of the bargain, in that he would not have purchased the Products, or would have paid substantially less for the Products, if he had known that the Products were not favored, endorsed, or approved by the FDA.

47.     When purchasing the Products, Plaintiff was also exposed to, saw, and relied upon Defendant's materially misleading misrepresentations on the Products' website [and retail website] that: (1) Plaintiff would be receiving the advertised discount as compared to the regular price of the Products; (2) the Products regularly and formerly sold at the purported regular price of between $69.99 and $120.00, and had a market value equal to that amount, but were available at the discount price of $49.99 for a limited time (if he purchased during the sale). Plaintiff relied on these materially misleading representations in deciding to purchase the Products manufactured and sold by Defendant, and these representations were part of the basis of the bargain, in that he would not have purchased the Products, or would have paid substantially less for the Products, if he had known that the Products were not discounted as advertised, and that he was not receiving the advertised discount.

48.     By purchasing Defendant's falsely advertised Products, Plaintiff suffered injury in fact and lost money.

49.     Plaintiff faces an imminent threat of future harm. Plaintiff would purchase the Products from Defendant again if Defendant's false and misleading statements were true. Plaintiff

is, however, unable to rely on Defendant's representations in deciding whether to purchase Defendant's Products in the future.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action individually and as representative of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Classes:

> National Class: All persons in the United States who, within the applicable limitations period, purchased the Products (the "National Class") for personal, family, or household use and not for resale.

> Illinois Subclass: All persons in the state of Illinois who, within the applicable limitations period, purchased the Products (the "Illinois Subclass") for personal, family, or household use and not for resale.

51.     Specifically excluded from these definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiff reserves the right to amend the Class definition and Subclass definitions as necessary.

52.     Certification of Plaintiff's claims for class-wide treatment are appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence that individual Class members would use to prove those elements in individual actions alleging the same claims.

53.     Numerosity. The members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown, it likely consists of thousands of consumers. The number of Class members can be determined by sales information and other records. Moreover, joinder of all potential Class members is not

practicable given their numbers and geographic diversity. The Classes are readily identifiable from information and records in the possession of Defendant and its authorized retailers.

54.     Typicality. The claims of the representative Plaintiff are typical in that Plaintiff, like all Class members, purchased the Products that were manufactured, marketed, advertised, distributed, and sold by Defendant. Furthermore, the factual basis of Defendant's misconduct is common to all Class members because Defendant has engaged in systematic fraudulent behavior that results in the same injury to all Class members.

55.     Commonality. Common questions of law and fact exist as to all members of the Classes. These questions predominate over questions that may affect only individual Class members because Defendant has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, inter alia:

a.     Whether Defendant made false or misleading statements of fact in connection with consumer transactions that reasonable consumers were likely to rely upon to their detriment;

b.     Whether Defendant knew or should have known that the representations and advertisements regarding the Products were false and misleading;

c.     Whether Defendant has breached express and implied warranties in the sale and marketing of the Products;

d.     Whether Defendant's conduct violates public policy;

e.     Whether Defendant's acts and omissions violate Illinois law;

f.     Whether Plaintiff and the Class members suffered monetary damages, and, if so, what is the measure of those damages; and

g.      Whether Plaintiff and the Class members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

56.     Adequacy of Representation. Plaintiff will fairly and adequately protect the interests of Class members. He has no interests antagonistic to those of Class members. Plaintiff retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

57.     Injunctive/Declaratory Relief: The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein, and Class members are likely to continue being damaged by Defendant's deceptive trade practices. Defendant has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

58.     Predominance and Superiority. Plaintiff and Class members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class members' individual claims, it is likely that few Class members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the

resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

59.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

60.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

## CAUSES OF ACTION

### COUNT I
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 ILCS 501/1, *et seq.* and 510/2)**
**(On Behalf of the National Class and Illinois Subclass)**

61.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

62.     Plaintiff brings this claim individually and on behalf of the members of the National Class and the Illinois Subclass against Defendant.

63.     Defendant, Plaintiff, and the Illinois Subclass are "persons" within the meaning 815 ILCS 505/1(c) and 510/1(5). Plaintiff and the Illinois Subclass members are "consumers" within the meaning of 815 ILCS 505/1(e).

64.     At all times mentioned herein, Defendant engaged in "trade" or "commerce" in Illinois as defined by 815 ILCS 505/1(f), in that it engaged in the "advertising," "offering for sale," "sale," and "distribution" of any "property," "article," "commodity" or "thing of value" in Illinois.

65.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("IFCA") provides that ". . . [u]nfair or or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the

concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act'… in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2. The ICFA further makes unlawful deceptive trade practices undertaken in the course of business. 815 ILCS 510/2.

66. For the reasons discussed herein, Defendant violated and continues to violate ICFA by engaging in the deceptive or unfair acts or practices prohibited by 815 ILCS 505/2 and 510/2. Defendant's acts and practices, including its material omissions, described herein, were intended to, likely to, and did in fact, deceive and mislead members of the public, including consumers acting and relying reasonably under the circumstances, to their detriment.

67. Defendant represented on its label that the Products were favored, endorsed, or approved by the FDA by placing the FDA logo on the back of the Products' packaging. Defendant also represented on its website and through other retailers' websites and advertisements that the Products were on sale for $49.99 for a limited time and discounted from the "regular" price.

68. Plaintiff and Illinois Subclass members would not have purchased the Products had they known Defendant's Products were not favored, endorsed, or approved by the FDA, or that the Products were not discounted as advertised and that they were not receiving the advertised discounts.

69. Defendant's representations were material because they were likely to deceive reasonable consumers to induce them to purchase the Products without being aware that the Products were not favored, endorsed, or approved by the FDA, or that the Products were not discounted as advertised and Plaintiffs were not receiving the advertised discounts.

70.     As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiffs and the Illinois Subclass members suffered damages by purchasing the Products in reliance on Defendant's statements because they would not have purchased the Products had they known Defendant's Products were not favored, endorsed, or approved by the FDA, or that the Products were not discounted as advertised and that they were not receiving the advertised discounts.

71.     Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Plaintiff, the Illinois Subclass, and the general public. Thus, Defendant's unlawful acts and practices complained of herein affect the public interest.

72.     Pursuant to 815 ILCS 505/10a(a) and 510/3, Plaintiff and the Illinois Subclass seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the ICFA.

**COUNT II**
**Breach of Implied Warranty of Merchantability**
**(On Behalf of the National Class and Illinois Subclass)**

73.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

74.     Plaintiff brings this claim individually and on behalf of the members of National Class and the Illinois Subclass against Defendant.

75.     Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, made representations to Plaintiff and the Class members regarding the FDA's favor, endorsement, or approval of the Products.

76. Plaintiff and the Class members bought the Products manufactured, advertised, and sold by Defendant, as described herein.

77. Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class members, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

78. Plaintiff and the Class members purchased the Products manufactured and marketed by Defendant by and through Defendant and Defendant's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Defendant's contracts with authorized sellers, or eventual purchasers when bought from a third party. Defendant knew or had reason to know of the specific use for which the Products were purchased.

79. However, Defendant breached the implied warranty of merchantability in that the Products are misbranded under 21 U.S.C. § 343(r).

80. Plaintiff provided Defendant with notice of the alleged breach within a reasonable time after he discovered the breach or should have discovered it.

81. As an actual and proximate result of Defendant's conduct, Plaintiff and the Class members did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to promises and affirmations made on the container or label of the Products, nor are they fit for their ordinary purpose of providing the benefits as promised.

82. Here, privity is not required because the implied warranty claim relates to food or other substances intended for human consumption by consumers, such as the Product.

83. To the extent privity is required, Defendant entered into contracts with the authorized retailers from whom Plaintiff and the Class members purchased the Product, and

Plaintiff and the Class members were the intended third-party beneficiaries of those contracts, an exception to the privity requirement.

84.     Plaintiff and the Class members have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Product's purchase prices.

**COUNT III**
**Breach of Express Warranty**
**(On Behalf of the National Class and Illinois Subclass)**

85.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

86.     Plaintiff brings this claim individually and on behalf of the members of National Class and the Illinois Subclass against Defendant.

87.     Defendant, as the marketer, distributor, and/or seller of the Products, issued material, written warranties by advertising that the Products had a regular price of $120.00 and had a market value equal to that amount, displayed on Defendant's website. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

88.     This warranty was part of the basis of the bargain and Plaintiff and Class members relied on this warranty.

89.     In fact, the Products' stated "regular" price and market value was not the Products' regular price or prevailing market value. Thus, the warranty was breached.

90.     Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant and its registered agent on March 21, 2023.

91.     Plaintiff and Class members were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they

would not have purchased the Products if they had known that the warranty was false, or (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered against Defendant as follows:

A.    Enter an order certifying the proposed Class (and Subclass, if applicable), designating Plaintiff as the class representative, and designating the undersigned as class counsel;

B.    Enter an order awarding Plaintiff and the Class members their actual damages and/or any other form of monetary relief provided by law;

C.    Declare that Defendant is financially responsible for notifying all Class members of the mislabeling and misbranding of the Product;

D.    Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Product, or order Defendant to make full restitution to Plaintiff and the members of the Class;

E.    An order awarding Plaintiff and the Classes pre-judgment and post-judgment interest as allowed under the law;

F.    Grant reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action, including expert witness fees; and

G.    Grant such other and further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff and the putative Class members hereby demand a trial by jury on all issues so triable.

Dated: March 27, 2024

Respectfully submitted,

By: */s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Ste. 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

Mariya Weekes*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
Fax: (786) 879-7520
mweekes@milberg.com

Jeff Ostrow*
Kristen Lake Cardoso*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas, Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
ostrow@kolawyers.com
cardoso@kolawyers.com

*Attorneys for Plaintiff and the Putative Class*

**pro hac vice* forthcoming